UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 3:18-cr-00075-RLY-MPB |
| ) | |
| BARBARA S. KELLEY, ) | |
| ) | |
| Defendant. ) | |

**PETITION TO ENTER PLEA OF GUILTY AND PLEA AGREEMENT**

The United States of America, by counsel, Josh J. Minkler, United States Attorney for the Southern District of Indiana, and, Kyle M. Sawa, Assistant United States Attorney ("the Government"), and the defendant, BARBARA S. KELLEY ("the defendant"), in person and by counsel, Steve Bohleber, hereby inform the Court that a Plea Agreement has been reached in this case pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The following are its terms and conditions:

**Part 1: Guilty Plea and Charge(s)**

1.  **Plea of Guilty:** The defendant petitions the Court for leave to enter and agrees to enter a plea of guilty to the following offense charged in the Superseding Indictment:

    A.  Count 1 which charges that the defendant committed the offense of Possession with Intent to Distribute Fifty Grams or More of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

2.  **Potential Maximum Penalties**: The offense charged in Count 1 of the Superseding Indictment is punishable by a minimum sentence of 10 years' imprisonment, a maximum sentence of life imprisonment, a $10,000,000 fine, and no less than 5 years' supervised release following any term of imprisonment.

3. **Elements of the Offense:** To sustain the offense(s) to which the defendant is pleading guilty, the Government must prove the following elements beyond a reasonable doubt:

   A. The defendant knowingly possessed 50 grams or more of methamphetamine (actual);

   B. The defendant intended to distribute the substance to another person; and

   C. The defendant knew the substance contained some kind of a controlled substance.

### Part 2: General Provisions

4. **Sentencing Court's Discretion Within Statutory Range:** The defendant agrees and understands that: (A) the Court will use its discretion to fashion a sentence within the statutory range(s) set forth above; (B) the Court will consider the factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence within the statutory range(s); (C) the Court will also consult and take into account the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") in determining the appropriate sentence within the statutory range(s); (D) the Sentencing Guidelines are not mandatory or binding on the Court, but are advisory in nature; (E) restitution may be imposed; (F) by pleading "Guilty" to more than one offense (Count), the Court may order the sentences to be served consecutively one after another; (G) the final determination concerning the applicable advisory guideline calculation, criminal history category, and advisory sentencing guideline range will be made by the Court; and (H) by pleading "Guilty," the Court may impose the same punishment as if the defendant had plead "Not Guilty," had stood trial and been convicted by a jury.

5. **Sentencing Court Not Bound by Guidelines or Recommendations:** The

defendant acknowledges that this Plea Agreement is governed by Federal Rule of Criminal Procedure 11(c)(1)(B) and that the determination of the defendant's sentence is within the discretion of the Court. The defendant understands that if the Court decides to impose a sentence higher or lower than any recommendation of either party, or determines a different advisory sentencing guideline range applies in this case, or decides to impose a sentence outside of the advisory sentencing guideline range for any reason, then the defendant will not be permitted to withdraw this plea of guilty for that reason and will be bound by this plea of guilty.

6. **Plea Agreement Based on Information Presently Known:** The defendant recognizes and understands that this Plea Agreement is based upon the information presently known to the Government. The Government agrees not to bring other federal charges against the defendant based on information currently known to the United States Attorney for the Southern District of Indiana.

The Government will inform the Court and the defendant at the time of taking the defendant's plea whether the Government has obtained any information after the Plea Agreement was signed that may warrant bringing other federal charges against the defendant.

7. **No Protection From Prosecution for Unknown or Subsequent Offenses:** The defendant acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense not specifically covered by this agreement, or not known to the United States Attorney for the Southern District of Indiana at this time. The defendant further acknowledges and agrees that nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement.

8. **Rights Under Rule 11(b), Fed. R. Crim. P.:** The defendant understands that the

Government has the right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath during the guilty plea colloquy. The defendant also understands that the defendant has the right: (A) to plead not guilty, or having already so pleaded, the right to persist in that plea; (B) to a jury trial; (C) to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceedings, including appeal; and (D) to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses. The defendant also understands that the Constitution guarantees the right to be considered for release until trial[1]; and if found guilty of the charge(s), the right to appeal the conviction on such charge(s) to a higher court. The defendant understands that if the Court accepts this plea of guilty, the defendant waives all of these rights.

### Part 3: Sentence of Imprisonment

9. **Sentencing Recommendation Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):** The parties have **not** agreed upon a specific sentence. The parties reserve the right to present evidence and arguments concerning what they believe to be the appropriate sentence in this matter.

    a.    **Government's Recommendation:** The Government has agreed to recommend a sentence within the Guidelines Range as calculated by the Court, provided that the defendant (i) continues to fully accept responsibility for the offense, (ii) does not commit a new criminal offense before the date of any sentencing, and (iii) does not otherwise violate the terms of any pre-trial release before the date of sentencing.

---

[1] Title 18, U.S.C. §§ 3141-3156, Release and Detention Pending Judicial Proceedings.

      **b.**    **Defendant's Recommendation:** The Defendant is free to ask for any sentence, including one below the advisory Guidelines range determined by the Court.

    **10.**    **Placement:** The Government agrees not to oppose any request made by the defendant for a recommendation by the Court that the defendant serve any period of imprisonment in a specific facility. The defendant acknowledges and understands that any recommendation by the Court does not bind the United States Bureau of Prisons.

    **11.**    **Supervised Release:** Both parties reserve the right to present evidence and arguments concerning whether the Court should impose a term of supervised release to follow any term of imprisonment in this case, the duration of any term of supervised release, and the terms and conditions of the release.

    **12.**    **Conditions of Supervised Release:** The parties understand and agree that the Court will determine which standard and special conditions of supervised release to apply in this case. The parties reserve the right to present evidence and arguments concerning these conditions.

### Part 4: Monetary Provisions and Forfeiture

    **13.**    **Mandatory Special Assessment:** The defendant will pay a total of $100 on the date of sentencing or as ordered by the Court to the Clerk, United States District Court, which amount represents the mandatory special assessment fee imposed pursuant to 18 U.S.C. § 3013.

    **14.**    **Fine:** The Government will not recommend the imposition of a fine in this case. However, the parties understand and agree that the Court will determine whether to impose a fine after hearing any arguments from the parties.

    **15.**    **Obligation to Pay Financial Component of Sentence:** If the defendant is

unable to pay any financial component of the defendant's sentence on the date of sentencing, then the defendant agrees that the payment of the financial component should be a condition of supervised release. The defendant has a continuing obligation to pay the financial component of the sentence. The defendant further agrees that as of the date of filing this Plea Agreement the defendant will provide all requested financial information, including privacy waivers, consents, and releases requested by the Government to access records to verify the defendant's financial disclosures, to the Government for use in the collection of any fines, restitution, and money judgments imposed by the Court and authorizes the Government to obtain credit reports relating to the defendant for use in the collection of any fines and restitution, and money judgments imposed by the Court. The defendant also authorizes the Government to inspect and copy all financial documents and information held by the United States Probation Office. If the defendant is ever incarcerated in connection with this case, the defendant may participate in the Bureau of Prisons Inmate Financial Responsibility Program.

16. **Forfeiture:** The defendant admits that the property listed below constitutes contraband, was used to facilitate, or constitutes the fruits of the commission of the offense(s) to which the defendant is pleading guilty, and, therefore, is subject to forfeiture to the United States. The defendant abandons all right, title, and interest the defendant may have in the property listed below so that proper disposition, including destruction, may be made thereof by federal, state, or local law enforcement agencies involved in the investigation of the defendant's criminal activity, without further notice or obligation whatsoever owing to the defendant. The defendant further agrees not to contest any forfeiture action brought against and consents to the forfeiture of any of the property listed below, whether any such forfeiture action is

administrative, judicial, civil, or criminal, and agrees not to contest any use or destruction of any of the property listed below by any federal, state, or local law enforcement agency:

      **A.** Approximately $5,157.00 in United States Currency;

      **B.** One (1) Samsung Galaxy S7, bearing serial number R38K50F8GFV; and

      **C.** One (1) black "accur8" digital scale.

The defendant consents to the entry of orders of forfeiture for such property and waives the requirements of Rules 32.2 and 43(a), Fed. R. Crim. P., regarding notice of the forfeiture in the charging document, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the defendant's guilty plea is accepted. The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

### Part 5: Factual Basis for Guilty Plea

17. The parties stipulate and agree that the following facts establish a factual basis for the defendant's plea of guilty to the offense set forth in Paragraph One, above, and that the Government would be able to establish the following facts beyond a reasonable doubt in the event this cause was to proceed to trial. The following information is only a summary of the Government's evidence. This Plea Agreement is not intended to foreclose the presentation of and the Government reserves the right to present additional evidence at the time of sentencing.

**A.** In or around August 2017, the Lead Agent received information from a credible and reliable Washington Police Department Confidential Source (hereafter referred to as the CS) regarding a source of supply of methamphetamine based out of Huntingburg, Indiana. Further investigation revealed the source's name as Barbara Sue Kelley. In September 2018, the Lead Agent obtained a search warrant to track the GPS location of a cell phone number linked to Barbara Kelley.

**B.** On September 13, 2018, law enforcement began monitoring the location of the target phone. On this same date, in the late evening hours, officers observed that the target phone appeared to be travelling East on Interstate 64 towards Louisville, Kentucky. As a result, law enforcement began surveillance along I-64. On September 13, 2018, Indiana State Police ("ISP") Trooper Connor Giesler was requested to assist the DEA Evansville Resident Office on Interstate 64 in Perry County, Indiana regarding possible narcotics trafficking. The DEA ERO believed that Barbara Kelley was traveling to Louisville, Kentucky to obtain quantities of methamphetamine.

**C.** On September 14, 2018, at approximately 1:15 a.m. EST, ISP Detective Mitch Wier observed who he knew to be Kelley at a gas station in Louisville. It was determined that Kelley was traveling with other occupants in a 2007 Chevy Equinox. At approximately 1:56 a.m. DEA TFO Brandon Garland observed a black Chevy Equinox pass the Georgetown exit traveling West on I-64. GPS locations were consistent with the observations of the officers. At approximately 2:09 a.m., DEA SA Kevin Ruffner was west of Corydon, Indiana and was able to confirm this vehicle to have a matching registration. Trooper Giesler observed via his radar that the Equinox was traveling at a rate of 78 miles per hour in a posted 55 mile per hour construction

zone. Trooper Giesler activated his emergency lights and the vehicle pulled over near the 74.5 mile marker in Perry County.

   **D.** Trooper Geisler approached the vehicle and confirmed Kelley to be the front seat passenger. While speaking with the driver, Trooper Geisler noticed that he was profusely sweating, he was visibly shaking and the artery in his neck was visibly throbbing. The driver also avoided making eye contact. Through Geisler's training and experience, he recognized these behaviors to be signs of nervousness. This increased his suspicion that a crime was taking place. Geisler advised the driver why he was stopped. The driver advised he did not realize it had dropped down to 55 MPH. Geisler requested Kelley's identification, to which she attempted to retrieve it from a purse on the floorboard by her feet but was unable to locate it at that time. Geisler asked Kelley if she would write down her name, date of birth, and social security number on his notepad. Kelley complied with the request.

   **E.** Geisler returned to his patrol vehicle to request license checks on the driver, along with warrant checks for all occupants. While requesting the returns for the driver through ISP dispatch, Officer Morgan utilized his K9 partner Felony to conduct a free air sniff of the vehicle with all occupants still inside the vehicle. Officer Morgan advised that Felony indicated to the presence of illegal narcotics during the free air sniff of the vehicle.

   **F.** Geisler assisted the other officers in having all occupants exit the vehicle. Geisler went to the passenger side window, where he spoke with Kelley. Geisler asked her to step out of the vehicle and stand with the other officers at the rear of the vehicle. As Kelley was exiting the vehicle, Geisler observed a large bulge in the front of her pants. Geisler followed Kelley to the rear of the vehicle.

G.   After all occupants had exited, Officer Morgan sent Felony into the vehicle. Officer Morgan advised that Felony indicated specifically on the purse that Kelley had retrieved her ID from. Officer Morgan advised that Felony did this on two occasions, and had also indicated on the passenger seat that Kelley had been sitting in. While searching the vehicle, Officers located a plastic sack in the front passenger floorboard that contained digital scales and multiple plastic baggies. Geisler also located a glass smoking device in between the driver's seat and center console. The glass smoking device contained residue and burn marks that through Geisler's training and experience he knew to be consistent with methamphetamine use.

H.   Geisler advised Officer James of his observation of the bulge in Kelley's pants. Officer James advised that while checking Kelley's pockets, she could feel what she believed to be plastic on the inside. Officer James advised that she asked Kelley what it was, and Kelley advised that it was methamphetamine in the front of her pants. Kelley then removed the methamphetamine herself from the inside of her pants.

I.   The item Kelley removed from her pants was a plastic baggie wrapped in rubber bands that further contained a multi-colored envelope, further containing a blue plastic baggie containing a crystal-like substance having a presumptive positive field test for methamphetamine. The total approximate weight of methamphetamine with the blue plastic baggie was **316 grams** (approximately 11 ounces). TFO Garland and Geisler know through their training and experience that this amount of methamphetamine is not that of a typical user amount, but would be that of a methamphetamine distributor. Kelley intended to distribute the methamphetamine that was found on her person.

J.   TFO Garland advised Kelley of her Miranda warning. Kelley indicated that she understood her rights and advised that the amount of methamphetamine she had

concealed was approximately 7-8 ounces. TFO Garland then began an audio-video recorded interview with Kelley, where she again confirmed that she understood her rights. Kelley confirmed that she had obtained the methamphetamine in Louisville.

  **K.** While TFO Garland was interviewing Kelley, Geisler located an undetermined amount of U.S. currency in multiple envelopes in Kelley's purse that Felony had alerted on. One bundle of currency was loose within the purse, and the remaining currency was in four separate envelopes. TFO Garland confirmed with Kelley that she was not working in the last year and subsequently seized the U.S. currency. Approximately $5,157 was seized and is listed in the forfeiture section of the Superseding Indictment and plea agreement.

  **L.** The crystal-like substance seized from Kelley was transported to DEA's North Central Laboratory for additional testing. The substance was identified as methamphetamine, with a net weight of 303.1 grams, +/- 0.2 grams. The substance had a purity of 78% +/- 3%, resulting in an amount of pure methamphetamine of 236.4 grams +/- 10.6 grams.

  **M.** Perry County, Indiana is located within the Southern District of Indiana.

## Part 6:  Other Conditions

18. **Background Information:** The defendant acknowledges and understands that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the defendant for the purpose of imposing an appropriate sentence. The defendant acknowledges and understands that the Government is not prohibited from providing information concerning background, character, and conduct of the defendant for the purpose of recommending or advocating an appropriate guideline calculation and sentence.

19. **Good Behavior Requirement:** The defendant agrees to fully comply with all

11

conditions of release imposed by the Court during all stages of this case. If the defendant fails to fully comply with such conditions, then the Government may withdraw from this Agreement.

20. **Compliance with Federal and State Laws:** The defendant understands that the obligations of the Government in this Plea Agreement are expressly contingent upon the defendant abiding by federal and state laws.

### Part 7: Sentencing Guideline Stipulations

21. **Guideline Computations:** Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties agree to the Stipulations below. The parties understand and agree that these Stipulations are binding on the parties but are only a recommendation to the Court and that the Court will determine the advisory sentencing guidelines applicable in this case. The parties agree that no stipulation regarding any factors in Chapter 4, Criminal History Category, of the Sentencing Guidelines has been made, and that such determination will be made by the Court. The 2018 version of the Sentencing Guidelines has been used by the parties to make the stipulations set forth below.

   A.   Pursuant to U.S.S.G. 2D1.1(a)(5) and 2D1.1(c)(4), the base level for the offense is **32** because the drug weight is at least 150 grams but less than 500 grams of methamphetamine (actual).

   B.   **Acceptance of Responsibility:** To date, the defendant has demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. Based upon the defendant's willingness to accept a Plea Agreement and enter a plea of guilty to the criminal conduct noted in this agreement and the defendant's agreement to cooperate in and not to contest the forfeiture of the property described above, the Government agrees that the defendant should receive a two (2) level reduction *provided* the defendant

satisfies the criteria set forth in Guideline § 3E1.1(a) up to and including the time of sentencing. The defendant timely notified the Government of defendant's intention to enter a plea of guilty, thereby permitting the Government and the Court to allocate their resources efficiently. After the Defendant enters a plea of guilty, the Government intends to file a motion pursuant to U.S.S.G. § 3E1.1(b) requesting that the Court decrease the offense level by one (1) additional level. The parties reserve the right to present evidence and arguments concerning the defendant's acceptance of responsibility at the time of sentencing.

  **C.**  **Final Offense Level: 29**

### Part 8:  Waiver of Right to Appeal

**22.**  **Direct Appeal:** The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. The defendant further expressly waives any and all challenges to the statute(s) to which the defendant is pleading guilty on constitutional grounds, as well as any challenge that the defendant's admitted conduct does not fall within the scope of the applicable statute(s). The defendant further agrees that in the event the Court sentences the defendant to a sentence within or below the sentencing guidelines as calculated by the Court, regardless of the defendant's criminal history category or how the sentence is calculated by the Court, then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This blanket waiver of

appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions supervised release and the amount of any fine.

23. **Later Legal Challenges:** Additionally, the defendant expressly agrees not to contest, or seek to modify, the defendant's conviction or sentence or the manner in which either was determined in any later legal proceeding, including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255. As concerns this Section 3582 waiver, should the United States Sentencing Commission and/or Congress in the future amend the Sentencing Guidelines to lower the guideline range that pertains to the defendant's offense(s) and explicitly make such an amendment retroactive, the Government agrees that it will not argue that this waiver bars the defendant from filing a motion with the district court pursuant to 18 U.S.C. § 3582(c)(2) based on that retroactive Guidelines amendment. However, if the defendant files such a motion, the Government may oppose the motion on any other grounds. Furthermore, should the defendant seek to appeal an adverse ruling of the district court on such a motion, the Government may claim that this waiver bars such an appeal. As concerns the Section 2255 waiver, the waiver does not prevent claims, either on direct or collateral review, that the defendant received ineffective assistance of counsel.

24. **No Appeal of Supervised Release Term and Conditions:** The parties' reservation of the rights to present evidence and arguments in this Court concerning the length and conditions of supervised release is not intended to be inconsistent with the Waiver of Appeal specified above, which includes a waiver of the right to appeal to the length and conditions of the period of supervised release.

### Part 9: Presentence Investigation Report

25. The defendant requests and consents to the commencement of a presentence

investigation by probation officers of the United States District Court for purposes of preparing a Presentence Investigation Report at this time and prior to the entry of a formal plea of guilty.

26.   The defendant further requests and consents to the review of the defendant's Presentence Investigation Report by a Judge, defendant's counsel, the defendant, and the Government at any time, including prior to entry of a formal plea of guilty.

### Part 10: Statement of the Defendant

27.   By signing this document, the defendant acknowledges the following:

a.   I have received a copy of the Superseding Indictment and have read and discussed it with my attorney. I believe and feel that I understand every accusation made against me in this case. I wish the Court to omit and consider as waived by me all readings of the Superseding Indictment in open Court, and all further proceedings including my arraignment.

b.   I have told my attorney the facts and surrounding circumstances as known to me concerning the matters mentioned in the Superseding Indictment, and believe and feel that my attorney is fully informed as to all such matters. My attorney has since informed, counseled and advised me as to the nature and cause of every accusation against me and as to any possible defenses I might have in this case.

c.   I have read the entire Plea Agreement and discussed it with my attorney.

d.   I understand all the terms of the Plea Agreement and those terms correctly reflect the results of plea negotiations.

e.   Except for the provisions of the Plea Agreement, no officer or agent of any branch of Government (federal, state or local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a

lighter sentence, or probation, or any other form of leniency, if I would plead "Guilty." I respectfully request that the Court consider in mitigation of punishment at the time of sentencing the fact that by voluntarily pleading "Guilty" I have saved the Government and the Court the expense and inconvenience of a trial. I understand that before it imposes sentence, the Court will address me personally and ask me if I wish to make a statement on my behalf and to present any information in mitigation of punishment.

   f. I am fully satisfied with my attorney's representation during all phases of this case. My attorney has done all that anyone could do to counsel and assist me and that I fully understand the proceedings in this case against me.

   g. I make no claim of innocence, and I am freely and voluntarily pleading guilty in this case.

   h. I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s) to which I am entering my plea.

   i. I understand that if convicted, a defendant who is not a United States Citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

   j. My attorney has informed me, and I understand, that I have the right to appeal any conviction and sentence that I receive, unless I have waived my right to appeal as part of this Plea Agreement. If I have not waived my right to appeal, I understand that I must file a Notice of Appeal within fourteen (14) days of the entry of the judgment in this case; I further understand that the Clerk of the Court will prepare and file a Notice of Appeal on my behalf if I ask that to be done. I also understand that the United States has the right to appeal any sentence that I receive under this Plea Agreement.

  **k.**  My attorney has informed me, and I understand, that if I provide or cause to be provided materially false information to a judge, magistrate-judge, or probation office, then Section 3C1.1 of the Sentencing Guidelines allows the Court to impose a two-level increase in the offense level.

  **l.**  If this cause is currently set for trial on the Court's calendar, I request that this date be continued to permit the Court to consider this proposed guilty Plea Agreement. I further understand that any delay resulting from the Court's consideration of this proposed guilty Plea Agreement, up to and including the date on which the Court either accepts or rejects my guilty plea, will be excluded in computing the time within which trial of this cause must commence, pursuant to 18 U.S.C. § 3161(h)(1)(G).

### Part 11: Certificate of Counsel

28.  By signing this document, the defendant's attorney and counselor certifies as follows:

  **a.**  I have read and fully explained to the defendant all the accusations against the Defendant which are set forth in the Superseding Indictment in this case;

  **b.**  To the best of my knowledge and belief each statement set forth in the foregoing petition to enter plea of guilty and Plea Agreement is in all respects accurate and true;

  **c.**  The plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement accords with my understanding of the facts as related to me by the defendant and is consistent with my advice to the defendant;

  **d.**  In my opinion, the defendant's waiver of all reading of the Superseding Indictment in open Court, and in all further proceedings, including arraignment as provided in

Rule 10, Fed. R. Crim. P., is voluntarily and understandingly made; and I recommend to the Court that the waiver be accepted by the Court;

  e. In my opinion, the plea of "Guilty" as offered by the defendant in the foregoing petition to enter plea of guilty and Plea Agreement is voluntarily and understandingly made and I recommend to the Court that the plea of "Guilty" be now accepted and entered on behalf of the defendant as requested in the foregoing petition to enter plea of guilty and Plea Agreement.

## Part 12: Final Provision

29. **Complete Agreement:** The defendant acknowledges that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this document, to induce the defendant to plead guilty. This document is the complete and only Plea Agreement between the defendant and the United States Attorney for the Southern District of Indiana and is binding only on the parties to the Plea Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified except in writing, signed by all parties and filed with the Court, or on the record in open court.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

9-4-19
DATE

Kyle M. Sawa
Assistant United States Attorney

9-3-19
DATE

Todd S. Shellenbarger
Deputy Chief, Evansville Branch

9/3/19
DATE

Barbara S. Kelley
Defendant

9/3/19
DATE

Steve Bohleber
Counsel for Defendant

19